# Exhibit 13

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

1. The earliest application leading to the 502 patent, EP743, was filed on March 22, 2012. EP743 included the following claims:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

1. A pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I).

2. A pharmaceutical composition according to any one of the preceding claims, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 30 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

3. A pharmaceutical composition according to claim 2, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within 31 minutes, such as within 32, 33, 34, 35, 36, 37, 38, 39, 40, 45, 50, 55, or 60 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

4. A pharmaceutical composition according to any one of the preceding claims, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition comprising a first type and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and said second type of granules comprises a GLP-1 peptide.

6. A pharmaceutical composition according to any one of the preceding claims, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1(7-37).

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;
d) dry granulation of the mixture of step c;
e) mixing the granules obtained in step b with the granules obtained in step d; and
f) optionally adding further lubricant.

12. A pharmaceutical composition obtained by the process as defined in any one of claims 9-11.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and

b) dry granulation of the mixture of step a.

14. A granule obtained by the process as defined in claim 13.

15. A composition as defined in any one of claims 1-8 or 12 or a granule as defined in claim 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(501 PH at APOSEM0038157-59).

2. The next application, EP459, was filed on January 31, 2013. EP459 included the following claims:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

1. A pharmaceutical composition comprising a first type of granules and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and no GLP-1 peptide, and wherein said second type of granules comprises a GLP-1 peptide and no salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid.

2. A pharmaceutical composition according to any one of the preceding claims, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I) and wherein said release is optionally determined within 30 minutes of said dissolution testing.

3. A pharmaceutical composition according to any one of the preceding claims, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 60 minutes, such as within 55, 50, 45, 40, 39, 38, 37, 36, 35, 34, 33, 32, 31, or 30 minutes, as determined by dissolution testing using Assay (I) at pH 2.5.

. A pharmaceutical composition according to any one of the preceding claims, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition according to any one of the preceding claims, wherein said first type of granules and said second type of granules comprises at least 50 % (w/w) of said composition.

6. A pharmaceutical composition according to any one of the preceding claims, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl] [Aib8,Arg34]GLP-1(7-37) or N-epsilon26-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy) decanoylamino]butyrylamino}ethoxy)ethoxy] acetylamino}ethoxy) ethoxy]acetyl}, N-epsilon37-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxy-phenoxy) decanoylamino] butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy) ethoxy]acetyl}-[Aib8,Arg34,Lys37]GLP-1(7-37)-OH.

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant,

wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino) caprylic acid.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant

wherein the mixture of step a does not comprise a GLP-1 peptide.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

> c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;
>
> d) dry granulation of the mixture of step c;
>
> e) mixing the granules obtained in step b with the granules obtained in step d; and
>
> f) optionally adding further lubricant,
>
> wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino) caprylic acid and wherein the mixture of step c does not comprise a GLP-1 peptide.
>
> 12. A pharmaceutical composition obtained by the process as defined in any one of claims 9-11.
>
> 13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:
>
> a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and
>
> b) dry granulation of the mixture of step a,
>
> wherein the mixture of step a does not comprise a GLP-1 peptide.
>
> 14. A granule obtained by the process as defined in claim 13.
>
> 15. A composition as defined in any one of claims 1-8 or 12 or a granule as defined in claim 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(*Id.* at APOSEM0038216-18).

3. The next application, the 840 provisional, was filed on January 4, 2013. The 840 provisional included the following claims:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

1. A pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I).

2. A pharmaceutical composition according to the preceding aspect, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 30 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

3. A pharmaceutical composition according to aspect 2, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within 31 minutes, such as within 32, 33, 34, 35, 36, 37, 38, 39, 40, 45, 50, 55, or 60 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

4. A pharmaceutical composition according to any one of the preceding aspects, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition comprising a first type and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and said second type of granules comprises a GLP-1 peptide.

6. A pharmaceutical composition according to any one of the preceding aspects, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding aspects, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding aspects, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1(7-37).

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;
d) dry granulation of the mixture of step c;
e) mixing the granules obtained in step b with the granules obtained in step d; and
f) optionally adding further lubricant.

12. A pharmaceutical composition obtained by the process as defined in any one of aspects 9-11.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:
  a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and
  b) dry granulation of the mixture of step a.

14. A granule obtained by the process as defined in aspect 13.

15. A composition as defined in any one of aspects 1-8 or 12 or a granule as defined in aspect 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(120 PH at APOSEM0028374-76).

4. The next application, PCT/EP2013/055362, was filed on March 15, 2013, and published as the 694 publication on September 26, 2013. (*Id.* at APOSEM0028484). The 694 publication included the following claims:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

1. A pharmaceutical composition comprising a first type of granules and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and no GLP-1 peptide, and wherein said second type of granules comprises a GLP-1 peptide and no salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid.

2. A pharmaceutical composition according to any one of the preceding claims, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I) and wherein said release is optionally determined within 30 minutes of said dissolution testing.

3. A pharmaceutical composition according to any one of the preceding claims, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 60 minutes, such as within 55, 50, 45, 40, 39, 38, 37, 36, 35, 34, 33, 32, 31, or 30 minutes, as determined by dissolution testing using Assay (I) at pH 2.5.

4. A pharmaceutical composition according to any one of the preceding claims, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition according to any one of the preceding claims, wherein said first type of granules and said second type of granules comprises at least 50 % (w/w) of said composition.

6. A pharmaceutical composition according to any one of the preceding claims, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-

[redacted]



heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1(7-37) or N-epsilon26-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy) decanoylamino]butyrylamino}ethoxy)ethoxy] acetylamino}ethoxy) ethoxy]acetyl}, N-epsilon37-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxy-phenoxy) decanoylamino] butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy) ethoxy]acetyl}-[Aib8,Arg34,Lys37]GLP-1(7-37)-OH.

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant,

wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant

wherein the mixture of step a does not comprise a GLP-1 peptide.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;

d) dry granulation of the mixture of step c;

e) mixing the granules obtained in step b with the granules obtained in step d; and

f) optionally adding further lubricant,

wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and wherein the mixture of step c does not comprise a GLP-1 peptide.

12. A pharmaceutical composition obtained by the process as defined in any one of claims 9-11.

13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and

b) dry granulation of the mixture of step a,

wherein the mixture of step a does not comprise a GLP-1 peptide.

14. A granule obtained by the process as defined in claim 13.

15. A composition as defined in any one of claims 1-8 or 12 or a granule as defined in claim 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(*Id.* at APOSEM0028537-39).

5. The next application, the 589 application, was filed as a national stage application of PCT 362 on September 19, 2014.

6. The 589 application issued as the 120 patent. (*See generally* 120 PH).

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

7. The next application, the 363 application, was filed as a continuation of the 589 application on January 25, 2021.

8. The 363 application issued as the 501 patent. (*See generally* 501 PH).

9. The last application, the 610 application, was filed as a continuation of the 363 application on April 13, 2022. The 610 application included the following claims:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

1. A solid dosage pharmaceutical composition comprising (1) a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (salt of NAC) and (2) a granule;
wherein the granule comprises semaglutide, a binder, a filler, and no salt of NAC;
wherein the filler is at least 15% (w/w) of the granule; and
wherein the binder is less than 40% (w/w) of the granule.

2. The composition according to claim 1, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC).

3. The composition according to claim 1, wherein the filler is microcrystalline cellulose.

4. The composition according to claim 1, wherein the filler is 50-75% (w/w) of the granule.

5. The composition according to claim 4, wherein the filler is microcrystalline cellulose.

6. The composition according to claim 1, wherein the binder is povidone.

7. The composition according to claim 1, wherein the binder is 15-25% (w/w) of the granule.

8. The composition according to claim 7, wherein the binder is povidone.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

9. The composition according to claim 1, further comprising a lubricant that is not in the granule.

10. The composition according to claim 9, wherein the lubricant is magnesium stearate.

11. The composition according to claim 1, wherein the weight of the composition is in the range of 150 mg to 1000 mg.

12. The composition according to claim 11, wherein the weight of the composition is in the range of 300 mg to 600 mg.

13. The composition according to claim 12, wherein the weight of the composition is in the range of 350 mg to 450 g.

14. The composition according to claim 1, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC), the filler is microcrystalline cellulose, and the binder is povidone.

15. The composition according to claim 1, wherein the filler is 50-75% (w/w) of the granule, and wherein the binder is 15-25% (w/w) of the granule.

16. The composition according to claim 15, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC), the filler is microcrystalline cellulose, and the binder is povidone.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

17. The composition according to claim 14, further comprising a lubricant that is not in the granule.

18. The composition according to claim 17, wherein the lubricant is magnesium stearate.

19. The composition according to claim 15, further comprising a lubricant that is not in the granule.

20. The composition according to claim 19, wherein the lubricant is magnesium stearate.

21. The composition according to claim 16, further comprising a lubricant that is not in the granule.

22. The composition according to claim 21, wherein the lubricant is magnesium stearate.

23. The composition according to claim 14, wherein the weight of the composition is in the range of 150 mg to 1000 mg.

24. The composition according to claim 23, wherein the weight of the composition is in the range of 300 mg to 600 mg.

25. The composition according to claim 15, wherein the weight of the composition is in the range of 150 mg to 1000 mg.

26. The composition according to claim 25, wherein the weight of the composition is in the range of 300 mg to 600 mg.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

27. The composition according to claim 16, wherein the weight of the composition is in the range of 150 mg to 1000 mg.

28. The composition according to claim 27, wherein the weight of the composition is in the range of 300 mg to 600 mg.

29. The composition according to claim 1, wherein the composition comprises at least 60% (w/w) of the salt of NAC.

30. The composition according to claim 29, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC).

31. The composition according to claim 29, wherein the composition comprises at least 70% (w/w) of the salt of NAC.

32. The composition according to claim 31, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC).

33. The composition according to claim 16, wherein the composition comprises at least 60% (w/w) of the SNAC.

34. The composition according to claim 33, wherein the composition comprises at least 70% (w/w) of the SNAC.

(502 PH at APOSEM0043983-86).

10. On April 21, 2022, the claims were preliminarily amended as follows:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

1. (Original) A solid dosage pharmaceutical composition comprising (1) a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (salt of NAC) and (2) a granule;

wherein the granule comprises semaglutide, a binder, a filler, and no salt of NAC;

wherein the filler is at least 15% (w/w) of the granule; and

wherein the binder is less than 40% (w/w) of the granule.

2. (Original) The composition according to claim 1, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC).

3. (Original) The composition according to claim 1, wherein the filler is microcrystalline cellulose.

4. (Original) The composition according to claim 1, wherein the filler is 50-75% (w/w) of the granule.

5. (Original) The composition according to claim 4, wherein the filler is microcrystalline cellulose.

6. (Original) The composition according to claim 1, wherein the binder is povidone.

7. (Original) The composition according to claim 1, wherein the binder is 15-25% (w/w) of the granule.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

8. (Original) The composition according to claim 7, wherein the binder is povidone.

9. (Original) The composition according to claim 1, further comprising a lubricant that is not in the granule.

10. (Original) The composition according to claim 9, wherein the lubricant is magnesium stearate.

11. (Original) The composition according to claim 1, wherein the weight of the composition is in the range of 150 mg to 1000 mg.

12. (Original) The composition according to claim 11, wherein the weight of the composition is in the range of 300 mg to 600 mg.

13. (Original) The composition according to claim 12, wherein the weight of the composition is in the range of 350 mg to 450 g.

14. (Original) The composition according to claim 1, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC), the filler is microcrystalline cellulose, and the binder is povidone.

15. (Original) The composition according to claim 1, wherein the filler is 50-75% (w/w) of the granule, and wherein the binder is 15-25% (w/w) of the granule.

16. (Original) The composition according to claim 15, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC), the filler is microcrystalline cellulose, and the binder is povidone.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

17. (Currently Amended) The composition according to claim 14, further comprising magnesium stearate~~a lubricant~~ that is not in the granule.

18. (Canceled)

19. (Currently Amended) The composition according to claim 15, further comprising magnesium stearate~~a lubricant~~ that is not in the granule.

20. (Canceled)

21. (Currently Amended) The composition according to claim 16, further comprising magnesium stearate~~a lubricant~~ that is not in the granule.

22. (Canceled)

23. (Canceled)

24. (Currently Amended) The composition according to claim 14[[23]], wherein the weight of the composition is in the range of 300 mg to 600 mg.

25. (Canceled)

26. (Currently Amended) The composition according to claim 15[[25]], wherein the weight of the composition is in the range of 300 mg to 600 mg.

27. (Canceled)

28. (Currently Amended) The composition according to claim 16[[27]], wherein the weight of the composition is in the range of 300 mg to 600 mg.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

> 29. (Original) The composition according to claim 1, wherein the composition comprises at least 60% (w/w) of the salt of NAC.
>
> 30. (Original) The composition according to claim 29, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC).
>
> 31. (Original) The composition according to claim 29, wherein the composition comprises at least 70% (w/w) of the salt of NAC.
>
> 32. (Original) The composition according to claim 31, wherein the salt of NAC is sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC).
>
> 33. (Original) The composition according to claim 16, wherein the composition comprises at least 60% (w/w) of the SNAC.
>
> 34. (Original) The composition according to claim 33, wherein the composition comprises at least 70% (w/w) of the SNAC.

(*Id.* at APOSEM0043995-99).

11. On August 19, 2022, the PTO issued an Office Action stating:

> **Disposition of Claims***
> 5) ☑ Claim(s) 1-17,19,21,24,26 and 28-34 is/are pending in the application.
> 5a) Of the above claim(s) _____ is/are withdrawn from consideration.
> 6) ☐ Claim(s) _____ is/are allowed.
> 7) ☐ Claim(s) _____ is/are rejected.
> 8) ☐ Claim(s) _____ is/are objected to.
> 9) ☑ Claim(s) 1-17,19,21,24,26 and 28-34 are subject to restriction and/or election requirement

(*Id.* at APOSEM0044117-18).

12. The examiner issued an election/restriction requirement. The examiner stated:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

***Election of Species Requirement***

This application contains claims directed to the following patentably distinct species of the claimed invention: a solid dose composition of Claim 1.

Applicant is required under **35 U.S.C. 121** to elect a single disclosed species with all variables defined for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable. Currently, Claim 1 is generic in light of the terms such as binder, filler, etc…, in combination or not, within the granules.

Applicant's claims are drawn to a number of distinct species that require a separate search. Such a search is a burden as each species much be considered independently and searched separately. Therefore, it is required of the Applicants to submit a single disclosed species to which an initial examination on the merits may begin.

Applicant is advised that a reply to this requirement must include an identification of the species that is elected consonant with this requirement, and a listing of all claims readable thereon, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

> Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which are written in dependent form or otherwise include all the limitations of an allowed generic claim as provided by **37 CFR 1.141**. If claims are added after the election, applicant must indicate which are readable upon the elected species. **MPEP § 809.02(a)**.
>
> Should applicant traverse on the ground that the species are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the species to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

(*Id.* at APOSEM0044119-20).

13. On October 14, 2022, Novo responded to the election/restriction requirement as follows:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

**REMARKS**

Summary of the claims

Claims 1-17, 19, 21, 24, 26, and 28-34 were previously pending. No claim is amended, added, or canceled. Thus, claims 1-17, 19, 21, 24, 26, and 28-34 remain pending and presented for consideration on the merits.

Species Election Requirement

The Office Action sets forth a species election requirement. Specifically, the Office Action requires Applicant to "elect a single disclosed species with all variables defined for prosecution on the merits." Office Action at page 2.

In response, Applicant elects a solid dosage pharmaceutical composition comprising sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC) and a granule, wherein the granule comprises semaglutide, povidone (binder), and microcrystalline cellulose (filler). See, for example, claim 14.

In view of the foregoing election, claims 1-17, 19, 21, 24, 26, and 28-34 encompass the elected species.

(*Id.* at APOSEM0044130).

14. On October 20, 2022, the 610 application published as U.S. Patent Publication No. 2022/0331404. (*Id.* at APOSEM0044132).

15. On November 10, 2022, the PTO rejected then-pending claims 1-17, 19, 21, 24, 26 and 28-34. (*Id.* at APOSEM0044133-34).

16. Claims 1-17, 19, 21, 24, 26 and 28-34 were rejected for nonstatutory double patenting. The examiner stated:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

Claims 1-17, 19, 21, 24, 26 and 28-34 are rejected on the ground of nonstatutory double patenting as being unpatentable over Claims 1-28 of U.S. Patent No. 10,933,120. Although the claims at issue are not identical, they are not patentably distinct from each other because the instant claims are drawn to a solid composition that comprises the same constituents.

The instant invention is drawn to a solid composition comprising a solid dosage pharmaceutical composition comprising (1) a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (salt of NAC) and (2) a granule;

wherein the granule comprises semaglutide, a binder, a filler, and no salt of NAC;

wherein the filler is at least 15% (w/w) of the granule; and

wherein the binder is less than 40% (w/w) of the granule.

The ‘120 patent is drawn to a composition comprising the same components in a single dosage. The amounts of the components vary in amount and composition of granules, but in the final formulation, the same ingredients are found in the solid dosage. It would have been obvious to formulate the composition of the instant claims from the teaching of the ‘120 patent. One would have been motivated to formulate the instant claims because the ‘120 patent teaches the same ingredients to be included in the final product. One would have a reasonable expectation of making the compound as claimed as the product, in view of its intended use, contains the same ingredients and would be expected to treat as the composition of the ‘120 patent. Therefore, the invention is obvious over the prior art.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

> Claims 1-34 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over Claim 16-41 of copending Application No. 17/157,363. Although the claims at issue are not identical, they are not patentably distinct from each other because the instant case contains the same components in the solid composition. The '363 co-pending application is drawn to a composition comprising the same components in a single dosage. The amounts of the components vary in amount and composition of granules, but in the final formulation, the same ingredients are found in the solid dosage. It would have been obvious to formulate the composition of the instant claims from the teaching of the '363 patent. One would have been motivated to formulate the instant claims because the '363 patent teaches the same ingredients to be included in the final product. One would have a reasonable expectation of making the compound as claimed as the product, in view of its intended use, contains the same ingredients and would be expected to treat as the composition of the '363 patent. Therefore, the invention is obvious over the prior art.
>
> This is a provisional nonstatutory double patenting rejection because the patentably indistinct claims have not in fact been patented.

(*Id.* at APOSEM0044136-37).

17. The examiner also commented on Novo's IDS:

> ***Information Disclosure Statement***
>
> The information disclosure statements (IDS) submitted on May 6th, 2022 & August 13th, 2022 has been considered to the best of the Examiner's ability. Given the large number of non-patent literature references, it is requested that Applicants check to assure that all references listed in the IDS have been submitted to avoid any issues at the time of allowance.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

(*Id.* at APOSEM0044135).

18. On December 14, 2022, Novo filed a terminal disclaimer:

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket Number (Optional) 8481US04 |
|---|---|

In re Application of: Thomas Vilhelmsen et al.

Application No.: 17/719,610

Filed: April 13, 2022

For: COMPOSITIONS OF GLP-1 PEPTIDES AND PREPARATION THEREOF

The applicant, Novo Nordisk A/S, owner of 100 percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of **prior patent** No. (see attached) as the term of said **prior patent** is presently shortened by any terminal disclaimer. The applicant hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the **prior patent** are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the applicant does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the **prior patent**, "as the term of said **prior patent** is presently shortened by any terminal disclaimer," in the event that said **prior patent** later:
expires for failure to pay a maintenance fee;
is held unenforceable;
is found invalid by a court of competent jurisdiction;
is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
has all claims canceled by a reexamination certificate;
is reissued; or
is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

| SUPPLEMENTAL SHEET FOR TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket |
|---|---|

**Prior patent** Nos. applicable to this terminal disclaimer (referenced on first page):

10,9331,20
17/157,363

(*Id.* at APOSEM0044203-04).

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

19. On December 14, 2022, Novo responded to the examiner's rejection without amending any of then-pending claims 1-17, 19, 21, 24, 26, and 28-34:

> Summary of the claims
>
> Claims 1-17, 19, 21, 24, 26, and 28-34 were previously pending. No claim is amended, added, or canceled. Thus, claims 1-17, 19, 21, 24, 26, and 28-34 remain pending and presented for consideration on the merits.

(*Id.* at APOSEM0044205-11).

20. In response to the nonstatutory double patenting rejection, Novo stated:

> Response to Double Patenting Rejection
>
> The Office Action rejects the pending claims under the judicially-created doctrine of nonstatutory double patenting in view of claims in US 10,933,120 and copending US 17/157,363. Without acquiescing to the merits of the rejection and to advance prosecution, a terminal disclaimer referencing the cited '120 patent and '363 application is concurrently filed with this response. Accordingly, Applicant respectfully requests that the nonstatutory double patenting rejections be withdrawn.

*Id.* at APOSEM0044210).

21. On January 4, 2023, the PTO rejected Novo's terminal disclaimer for using the wrong form:

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

| APPLICATION NO./ CONTROL NO. | FILING DATE | FIRST NAMED INVENTOR/ PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 17/719,610 | 04/13/2022 | Vilhelmsen et al. | 8481US04 |

**NOVO NORDISK INC. INTELLECTUAL PROPERTY DEPARTMENT**
**800 Scudders Mill Road**
**Plainsboro, NJ 08536**

| EXAMINER | |
|---|---|
| THOMAS S HEARD | |
| ART UNIT | PAPER |
| 1654 | 20221229 |

DATE MAILED: ______

**Please find below and/or attached an Office communication concerning this application or proceeding.**

**Commissioner for Patents**

Wrong form used: TD form is over a patent, however, a reference application is also cited on the TD.
Please correct and resubmit the TD. (No new fee required)

(*Id.* at APOSEM0044213-14).

22. On January 4, 2023, Novo filed a new terminal disclaimer, which was approved by the PTO the same day:

[redacted]

## Appendix I—502 Prosecution History
March 6, 2025

| | |
|---|---|
| Electronic Petition Request | **TERMINAL DISCLAIMER TO OBVIATE A PROVISIONAL DOUBLE PATENTING REJECTION OVER A PENDING "REFERENCE" APPLICATION AND TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT** |
| Application Number | 17719610 |
| Filing Date | 13-Apr-2022 |
| First Named Inventor | Thomas Vilhelmsen |
| Attorney Docket Number | 8481US04 |
| Title of Invention | COMPOSITIONS OF GLP-1 PEPTIDES AND PREPARATION THEREOF |

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

☒ Filing of terminal disclaimer does not obviate requirement for response under 37 CFR 1.111 to outstanding Office Action

☒ This electronic Terminal Disclaimer is not being used for a Joint Research Agreement.

| Owner | Percent Interest |
|---|---|
| Novo Nordisk A/S | 100 % |

The owner(s) of percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending reference Application Number(s)

17157363 filed on 01/25/2021

as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference application. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the reference application are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term of any patent granted on said reference application, "as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference application," in the event that any such patent granted on the pending reference application: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

The owner(s) with percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of prior patent number(s)

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

10933120

as the term of said prior patent is presently shortened by any terminal disclaimer. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the prior patent, "as the term of said prior patent is presently shortened by any terminal disclaimer," in the event that said prior patent later:
- expires for failure to pay a maintenance fee;
- is held unenforceable;
- is found invalid by a court of competent jurisdiction;
- is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
- has all claims canceled by a reexamination certificate;
- is reissued; or
- is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

○ Terminal disclaimer fee under 37 CFR 1.20(d) is included with Electronic Terminal Disclaimer request.

◉ I certify, in accordance with 37 CFR 1.4(d)(4), that the terminal disclaimer fee under 37 CFR 1.20(d) required for this terminal disclaimer has already been paid in the above-identified application.

[redacted]

**Appendix I—502 Prosecution History**
March 6, 2025

Doc Code: DISQ.E.FILE
Document Description: Electronic Terminal Disclaimer – Approved

Application No.: 17719610

Filing Date: 13-Apr-2022

Applicant/Patent under Reexamination: Vilhelmsen

Electronic Terminal Disclaimer filed on January 4, 2023

☒ APPROVED

**This patent is subject to a terminal disclaimer**

☐ DISAPPROVED

Approved/Disapproved by: Electronic Terminal Disclaimer automatically approved by EFS-Web

(*Id.* at APOSEM0044215-17).

23. On June 14, 2023, the PTO allowed claims 1-17, 19, 21, 24, 26, and 28-34. The examiner did not provide any reasons for allowance. (*Id.* at APOSEM0044230-34).

24. On September 19, 2023, the 502 patent issued. (*Id.* at APOSEM0044273).