# Exhibit 14

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

1. The earliest application leading to the 503 patent, EP743, was filed on March 22, 2012. EP743 included the following claims:

1. A pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I).

2. A pharmaceutical composition according to any one of the preceding claims, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 30 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

3. A pharmaceutical composition according to claim 2, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within 31 minutes, such as within 32, 33, 34, 35, 36, 37, 38, 39, 40, 45, 50, 55, or 60 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

4. A pharmaceutical composition according to any one of the preceding claims, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition comprising a first type and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and said second type of granules comprises a GLP-1 peptide.

6. A pharmaceutical composition according to any one of the preceding claims, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1(7-37).

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;
d) dry granulation of the mixture of step c;
e) mixing the granules obtained in step b with the granules obtained in step d; and
f) optionally adding further lubricant.

12. A pharmaceutical composition obtained by the process as defined in any one of claims 9-11.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:
   a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and
   b) dry granulation of the mixture of step a.

14. A granule obtained by the process as defined in claim 13.

15. A composition as defined in any one of claims 1-8 or 12 or a granule as defined in claim 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(501 PH at APOSEM0038157-59).

2. The next application, EP459, was filed on January 31, 2013. EP459 included the following claims:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

1. A pharmaceutical composition comprising a first type of granules and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and no GLP-1 peptide, and wherein said second type of granules comprises a GLP-1 peptide and no salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid.

2. A pharmaceutical composition according to any one of the preceding claims, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I) and wherein said release is optionally determined within 30 minutes of said dissolution testing.

3. A pharmaceutical composition according to any one of the preceding claims, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 60 minutes, such as within 55, 50, 45, 40, 39, 38, 37, 36, 35, 34, 33, 32, 31, or 30 minutes, as determined by dissolution testing using Assay (I) at pH 2.5.

. A pharmaceutical composition according to any one of the preceding claims, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition according to any one of the preceding claims, wherein said first type of granules and said second type of granules comprises at least 50 % (w/w) of said composition.

6. A pharmaceutical composition according to any one of the preceding claims, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1(7-37) or N-epsilon26-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy) decanoylamino]butyrylamino}ethoxy)ethoxy] acetylamino}ethoxy) ethoxy]acetyl}, N-epsilon37-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxy-phenoxy) decanoylamino] butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy) ethoxy]acetyl}-[Aib8,Arg34,Lys37]GLP-1(7-37)-OH.

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant,

wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino) caprylic acid.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant

wherein the mixture of step a does not comprise a GLP-1 peptide.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

> c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;
> d) dry granulation of the mixture of step c;
> e) mixing the granules obtained in step b with the granules obtained in step d; and
> f) optionally adding further lubricant,
>
> wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino) caprylic acid and wherein the mixture of step c does not comprise a GLP-1 peptide.
>
> 12. A pharmaceutical composition obtained by the process as defined in any one of claims 9-11.
>
> 13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:
> a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and
> b) dry granulation of the mixture of step a,
>
> wherein the mixture of step a does not comprise a GLP-1 peptide.
>
> 14. A granule obtained by the process as defined in claim 13.
>
> 15. A composition as defined in any one of claims 1-8 or 12 or a granule as defined in claim 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(*Id.* at APOSEM0038216-18).

3. The next application, the 840 provisional, was filed on January 4, 2013. The 840 provisional included the following claims:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

1. A pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I).

2. A pharmaceutical composition according to the preceding aspect, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 30 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

3. A pharmaceutical composition according to aspect 2, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within 31 minutes, such as within 32, 33, 34, 35, 36, 37, 38, 39, 40, 45, 50, 55, or 60 minutes as determined by dissolution testing using Assay (I) at pH 2.5.

4. A pharmaceutical composition according to any one of the preceding aspects, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition comprising a first type and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and said second type of granules comprises a GLP-1 peptide.

6. A pharmaceutical composition according to any one of the preceding aspects, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding aspects, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding aspects, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl] [Aib8,Arg34]GLP-1(7-37).

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;
d) dry granulation of the mixture of step c;
e) mixing the granules obtained in step b with the granules obtained in step d; and
f) optionally adding further lubricant.

12. A pharmaceutical composition obtained by the process as defined in any one of aspects 9-11.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:
    a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and
    b) dry granulation of the mixture of step a.

14. A granule obtained by the process as defined in aspect 13.

15. A composition as defined in any one of aspects 1-8 or 12 or a granule as defined in aspect 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(120 PH at APOSEM0028374-76).

4. The next application, PCT/EP2013/055362, was filed on March 15, 2013, and published as the 694 publication on September 26, 2013. (*Id.* at APOSEM0028484). The 694 publication included the following claims:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

1. A pharmaceutical composition comprising a first type of granules and a second type of granules, wherein said first type of granules comprises a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and no GLP-1 peptide, and wherein said second type of granules comprises a GLP-1 peptide and no salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid.

2. A pharmaceutical composition according to any one of the preceding claims, wherein the release of said salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is simultaneous with or faster than the release of said GLP-1 peptide as determined by dissolution testing using Assay (I) and wherein said release is optionally determined within 30 minutes of said dissolution testing.

3. A pharmaceutical composition according to any one of the preceding claims, wherein the dissolved amount of the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid peaks within the first 60 minutes, such as within 55, 50, 45, 40, 39, 38, 37, 36, 35, 34, 33, 32, 31, or 30 minutes, as determined by dissolution testing using Assay (I) at pH 2.5.

4. A pharmaceutical composition according to any one of the preceding claims, wherein said dissolution testing using Assay (I) is carried out at any one of pH 1.0-8.0, such as pH 1.0, 2.5, or 6.8.

5. A pharmaceutical composition according to any one of the preceding claims, wherein said first type of granules and said second type of granules comprises at least 50 % (w/w) of said composition.

6. A pharmaceutical composition according to any one of the preceding claims, wherein the salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid is SNAC.

7. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide comprises an albumin binding moiety.

8. A pharmaceutical composition according to any one of the preceding claims, wherein the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-carboxy-4-(17-carboxy-

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

heptadecanoylamino) butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl] [Aib8,Arg34]GLP-1(7-37) or N-epsilon26-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy) decanoylamino]butyrylamino}ethoxy)ethoxy] acetylamino}ethoxy) ethoxy]acetyl}, N-epsilon37-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxy-phenoxy) decanoylamino] butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy) ethoxy]acetyl}-[Aib8,Arg34,Lys37]GLP-1(7-37)-OH.

9. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid; and
d) optionally adding further lubricant,

wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid.

10. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid with a lubricant and/or a filler;
b) dry granulation of the mixture of step a;
c) mixing the granules obtained in step b with a composition comprising a GLP-1 peptide; and
d) optionally adding further lubricant

wherein the mixture of step a does not comprise a GLP-1 peptide.

11. A process of producing a pharmaceutical composition comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and a GLP-1 peptide, wherein the process comprises the steps:

a) mixing a GLP-1 peptide with a filler and/or a binder;
b) dry granulation of the mixture of step a;

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

c) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, optionally a lubricant and/or a filler;

d) dry granulation of the mixture of step c;

e) mixing the granules obtained in step b with the granules obtained in step d; and

f) optionally adding further lubricant,

wherein the mixture of step a does not comprise a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid and wherein the mixture of step c does not comprise a GLP-1 peptide.

12. A pharmaceutical composition obtained by the process as defined in any one of claims 9-11.

13. A process of producing a granule comprising a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid, wherein the process comprises the steps:

a) mixing a salt of N-(8-(2-hydroxybenzoyl)amino)caprylic acid (such as SNAC) with a lubricant and/or a filler; and

b) dry granulation of the mixture of step a,

wherein the mixture of step a does not comprise a GLP-1 peptide.

14. A granule obtained by the process as defined in claim 13.

15. A composition as defined in any one of claims 1-8 or 12 or a granule as defined in claim 14 for use in medicine, such as for treatment of diabetes or obesity, wherein said composition is administered orally.

(*Id.* at APOSEM0028537-39).

5. The next application, the 589 application, was filed as a national stage application of PCT 362 on September 19, 2014.

6. The 589 application issued as the 120 patent. (*See generally* 120 PH).

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

7. The next application, the 363 application, was filed as a continuation of the 589 application on January 25, 2021.

8. The 363 application issued as the 501 patent. (*See generally* 501 PH).

9. The last application, the 629 application, was filed as a continuation of the 363 application on April 13, 2022. The 629 application included the following claims:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

1. A solid dosage pharmaceutical composition comprising:

(a) a first type of granules comprising at least 75% (w/w) of sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC) and less than 10% (w/w) of a lubricant; and

(b) a second type of granules comprising semaglutide, at least 15% (w/w) of a filler, and less than 40% (w/w) of a binder.

2. The composition according to claim 1, wherein the lubricant is magnesium stearate.

3. The composition according to claim 1, wherein the lubricant is 1-3% (w/w) of the first granule.

4. The composition according to claim 3, wherein the lubricant is magnesium stearate.

5. The composition according to claim 1, wherein the filler is microcrystalline cellulose.

6. The composition according to claim 1, wherein the filler is 50-75% (w/w) of the second granule.

7. The composition according to claim 6, wherein the filler is microcrystalline cellulose.

8. The composition according to claim 1, wherein the binder is povidone.

9. The composition according to claim 1, wherein the binder is 15-25% (w/w) of the second granule.

10. The composition according to claim 9, wherein the binder is povidone.

11. The composition according to claim 1, further comprising a filler in the first granule.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

12. The composition according to claim 11, wherein the filler is microcrystalline cellulose.

13. The composition according to claim 11, wherein the filler is less than 20% (w/w) of the first granule.

14. The composition according to claim 13, wherein the filler is microcrystalline cellulose.

15. The composition according to claim 11, wherein the filler is 10-20% (w/w) of the first granule.

16. The composition according to claim 15, wherein the filler is microcrystalline cellulose.

17. The composition according to claim 14, wherein the filler is 14-17% (w/w) of the granule.

18. The composition according to claim 17, wherein the filler is microcrystalline cellulose.

19. The composition according to claim 1, wherein the weight of the composition is in the range of 150 mg to 1000 mg.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

20. The composition according to claim 1, wherein the lubricant is magnesium stearate, the filler is microcrystalline cellulose, and the binder is povidone.

21. The composition according to claim 1, wherein the SNAC is 80-86% (w/w) of the first granule, the lubricant is 1-3% (w/w) of the first granule, the filler is 50-75% (w/w) of the second granule, and the binder is 15-25% (w/w) of the second granule.

22. The composition according to claim 21, wherein the lubricant is magnesium stearate, the filler is microcrystalline cellulose, and the binder is povidone.

23. The composition according to claim 1, further comprising lubricant outside the first type of granules and second type of granules.

24. The composition according to claim 23, wherein the lubricant is magnesium stearate.

25. The composition according to claim 24, wherein the magnesium stearate outside the first type of granules and the second type of granules is in an amount of 2 mg.

26. The composition according to claim 22, further comprising lubricant outside the first type of granules and second type of granules.

27. The composition according to claim 26, wherein the lubricant is magnesium stearate.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

| |
|---|
| 28. The composition according to claim 27, wherein the magnesium stearate outside the first type of granules and the second type of granules is in an amount of 2 mg. |
| 29. The composition according to claim 1, wherein the composition comprises at least 60% (w/w) of the SNAC. |
| 30. The composition according to claim 29, wherein the composition comprises at least 70% (w/w) of the SNAC. |
| 31. The composition according to claim 22, wherein the composition comprises at least 60% (w/w) of the SNAC. |
| 32. The composition according to claim 31, wherein the composition comprises at least 70% (w/w) of the SNAC. |

(503 PH at APOSEM0044431-33).

10. On April 21, 2022, the claims were preliminarily amended as follows:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

1. (Original) A solid dosage pharmaceutical composition comprising:

(a) a first type of granules comprising at least 75% (w/w) of sodium N-(8-(2-hydroxybenzoyl)amino)caprylic acid (SNAC) and less than 10% (w/w) of a lubricant; and

(b) a second type of granules comprising semaglutide, at least 15% (w/w) of a filler, and less than 40% (w/w) of a binder.

2. (Original) The composition according to claim 1, wherein the lubricant is magnesium stearate.

3. (Original) The composition according to claim 1, wherein the lubricant is 1-3% (w/w) of the first granule.

4. (Original) The composition according to claim 3, wherein the lubricant is magnesium stearate.

5. (Original) The composition according to claim 1, wherein the filler is microcrystalline cellulose.

6. (Original) The composition according to claim 1, wherein the filler is 50-75% (w/w) of the second granule.

7. (Original) The composition according to claim 6, wherein the filler is microcrystalline cellulose.

8. (Original) The composition according to claim 1, wherein the binder is povidone.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

9. (Original) The composition according to claim 1, wherein the binder is 15-25% (w/w) of the second granule.

10. (Original) The composition according to claim 9, wherein the binder is povidone.

11. (Original) The composition according to claim 1, further comprising a filler in the first granule.

12. (Original) The composition according to claim 11, wherein the filler is microcrystalline cellulose.

13. (Original) The composition according to claim 11, wherein the filler is less than 20% (w/w) of the first granule.

14. (Original) The composition according to claim 13, wherein the filler is microcrystalline cellulose.

15. (Original) The composition according to claim 11, wherein the filler is 10-20% (w/w) of the first granule.

16. (Original) The composition according to claim 15, wherein the filler is microcrystalline cellulose.

17. (Original) The composition according to claim 14, wherein the filler is 14-17% (w/w) of the granule.

18. (Original) The composition according to claim 17, wherein the filler is microcrystalline cellulose.

19. (Original) The composition according to claim 1, wherein the weight of the composition is in the range of 150 mg to 1000 mg.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

20. (Original) The composition according to claim 1, wherein the lubricant is magnesium stearate, the filler is microcrystalline cellulose, and the binder is povidone.

21. (Original) The composition according to claim 1, wherein the SNAC is 80-86% (w/w) of the first granule, the lubricant is 1-3% (w/w) of the first granule, the filler is 50-75% (w/w) of the second granule, and the binder is 15-25% (w/w) of the second granule.

22. (Original) The composition according to claim 21, wherein the lubricant is magnesium stearate, the filler is microcrystalline cellulose, and the binder is povidone.

23. (Original) The composition according to claim 1, further comprising lubricant outside the first type of granules and second type of granules.

24. (Original) The composition according to claim 23, wherein the lubricant is magnesium stearate.

25. (Canceled)

26. (Currently Amended) The composition according to claim 22, further comprising magnesium stearate~~lubricant~~ outside the first type of granules and second type of granules.

27. (Canceled)

28. (Currently Amended) The composition according to claim 26[[27]], wherein the magnesium stearate outside the first type of granules and the second type of granules is in an amount of 2 mg.

29. (Original) The composition according to claim 1, wherein the composition comprises at least 60% (w/w) of the SNAC.

30. (Original) The composition according to claim 29, wherein the composition comprises at least 70% (w/w) of the SNAC.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

31. (Original) The composition according to claim 22, wherein the composition comprises at least 60% (w/w) of the SNAC.

32. (Original) The composition according to claim 31, wherein the composition comprises at least 70% (w/w) of the SNAC.

(*Id.* at APOSEM0044438-42).

11. On September 2, 2022, the PTO issued an Office Action stating:

**Disposition of Claims***

5) ☑ Claim(s) 1-24,26 and 28-32 is/are pending in the application.

5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☐ Claim(s) _____ is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☑ Claim(s) 1-24,26 and 28-32 are subject to restriction and/or election requirement

(*Id.* at APOSEM0044559-60).

12. The Examiner issued an election/restriction requirement. The Examiner stated:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

***Election of Species Requirement***

This application contains claims directed to the following patentably distinct species of the claimed invention: Claim 1 is drawn to a genius of components as well as their amounts.

Applicant is required under **35 U.S.C. 121** to elect a single disclosed species with all variables defined for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable. Currently, Claims 1, 3, 6, 9, 11, 13, 15, 17, 19, 21, 23, and 28-32 are generic.

Applicant's claims are drawn to a number of distinct species that require a separate search. Such a search is a burden as each species much be considered independently and searched separately. Therefore, it is required of the Applicants to submit a **single disclosed species** to which an initial examination on the merits may begin.

Applicant is advised that a reply to this requirement must include an identification of the species that is elected consonant with this requirement, and a listing of all claims readable thereon, including any claims subsequently added. An argument that a claim is allowable or that all claims are generic is considered nonresponsive unless accompanied by an election.

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims to additional species which are written in dependent form or otherwise include all the limitations of an allowed generic claim as provided by **37 CFR 1.141**. If claims are added after the election, applicant must indicate which are readable upon the elected species. **MPEP §**

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

> **809.02(a)**.
>
> Should applicant traverse on the ground that the species are not patentably distinct, applicant should submit evidence or identify such evidence now of record showing the species to be obvious variants or clearly admit on the record that this is the case. In either instance, if the examiner finds one of the inventions unpatentable over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

(*Id.* at APOSEM0044561-62).

13. On October 27, 2022, Novo responded to the election/restriction requirement as follows:

> **REMARKS**
>
> Summary of the claims
>
> Claims 1-24, 26, and 28-32 were previously pending. With this response, no claim is amended, added, or canceled.
>
> Response to Election of Species Requirement
>
> The Office Action requires Applicant to submit a single disclosed species to which an initial examination on the merits may begin. In response, Applicant hereby elects a solid dosage pharmaceutical composition comprising (a) magnesium stearate as the lubricant in the first type of granules, (b) microcrystalline cellulose as the filler and povidone as the binder in the second type of granules, and (c) magnesium stearate as the lubricant outside the first type of granules and second type of granules.
>
> In view of the foregoing species election, claims 1-24, 26, and 28-32 comprise claims readable on the elected species.

[redacted]



(*Id.* at APOSEM0044573-74).

14. On November 10, 2022, the PTO rejected then-pending claims 1-24, 26, and 28-32. (*Id.* at APOSEM0044575-76).

15. Claims 1-24, 26, and 28-32 were rejected for nonstatutory double patenting. The Examiner stated:

> Claims 1-24, 26, and 28-32 are rejected on the ground of nonstatutory double patenting as being unpatentable over Claims 1-28 of U.S. Patent No. 10,933,120. Although the claims at issue are not identical, they are not patentably distinct from each other because the same components are found in the '120 patent that is instantly claimed.
>
> The '120 patent discloses the SNAC and semaglutide, along with the same lubricant and fillers, and other claimed components. It would have obvious to combine the ingredients of the '120 patent to formulate a final composition containing the same ingredients. One would be motivated to combine as these have been taught to be benefits of the GLP-1 as disclosed in the specification. One of ordinary skill in the art would have a reasonable expectation of success in the combination for its intended use. Therefore, the invention is obvious over the '120 patent.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

> Claims 1-24, 26, and 28-32 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over Claims 16-41 of copending Application 17/157,363 and Claims 1-17, 19, 21, 24, 26, and 28-34 of copending Application No. 17/719,610. Although the claims at issue are not identical, they are not patentably distinct from each other because the same components are being combined for a GLP-1 and SNAC composition.
>
> The instant invention is drawn to compositions comprising GLP-1 and SNAC. The copending Applications of '363 and '610 teach the same components to be combined in a single composition. It would have been obvious to combine the components of instant invention as they taught to be use together in a pharmaceutical composition for the intended use as disclosed in the specification. One would have a reasonable expectation of success in combining the individual components for a final product for oral administration. Therefore, the invention is obvious over the copending applications.
>
> This is a provisional nonstatutory double patenting rejection because the patentably indistinct claims have not in fact been patented.

(*Id.* at APOSEM0044578-79).

16. On November 17, 2022, the 629 application published as U.S. Patent Publication No. 2022/0362346. (*Id.* at APOSEM0044663).

17. On December 14, 2022, Novo filed a terminal disclaimer:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket Number (Optional) 8481US05 |
| --- | --- |

In re Application of: Thomas Vilhelmsen et al.

Application No.: 17/719,629

Filed: April 13, 2022

For: COMPOSITIONS OF GLP-1 PEPTIDES AND PREPARATION THEREOF

The applicant, Novo Nordisk A/S, owner of 100 percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of **prior patent** No. (see attached) as the term of said **prior patent** is presently shortened by any terminal disclaimer. The applicant hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the **prior patent** are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the applicant does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the **prior patent**, "as the term of said **prior patent** is presently shortened by any terminal disclaimer," in the event that said **prior patent** later:
expires for failure to pay a maintenance fee;
is held unenforceable;
is found invalid by a court of competent jurisdiction;
is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
has all claims canceled by a reexamination certificate;
is reissued; or
is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

| SUPPLEMENTAL SHEET FOR TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket |
| --- | --- |

**Prior patent** Nos. applicable to this terminal disclaimer (referenced on first page):
10,933,120
17/157,363
17/719,610

(*Id.* at APOSEM0044666-67).

18. On December 14, 2022, Novo responded to the Examiner's rejection without amending any of then-pending claims 1-24, 26, and 28-32:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

> Summary of the claims
>
> Claims 1-24, 26, and 28-32 were previously pending. With this response, no claim is amended, added, or canceled.

(*Id.* at APOSEM0044670-76).

19. In response to the nonstatutory double patenting rejection, Novo stated:

> Response to Double Patenting Rejection
>
> The Office Action rejects the pending claims under the judicially-created doctrine of nonstatutory double patenting in view of claims in US 10,933,120, copending US 17/157,363, and copending US 17/719,610. Without acquiescing to the merits of the rejection and to advance prosecution, a terminal disclaimer referencing the cited '120 patent and '363 and '610 applications is concurrently filed with this response. Accordingly, Applicant respectfully requests that the nonstatutory double patenting rejections be withdrawn.

(*Id.* at APOSEM0044676).

20. On January 4, 2023, the PTO rejected Novo's terminal disclaimer for using the wrong form:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

| APPLICATION NO./ CONTROL NO. | FILING DATE | FIRST NAMED INVENTOR/ PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 17/719,629 | 04/13/2022 | Vilhelmsen et al. | 8481US05 |

| | | EXAMINER | |
|---|---|---|---|
| **NOVO NORDISK INC. INTELLECTUAL PROPERTY DEPARTMENT**<br>**800 Scudders Mill Road**<br>**Plainsboro, NJ 08536** | | THOMAS S HEARD | |
| | | **ART UNIT** | **PAPER** |
| | | 1654 | 20221229 |

DATE MAILED: ______

**Please find below and/or attached an Office communication concerning this application or proceeding.**

**Commissioner for Patents**

Wrong form used: TD form is over a patent, however, a reference application is also cited on the TD.
Please correct and resubmit the TD. (No new fee required)

(*Id.* at APOSEM0044678-79).

21. On January 4, 2023, Novo filed a new terminal disclaimer, which was approved by the PTO the same day:

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

| | |
|---|---|
| **Doc Code: DIST.E.FILE**<br>**Document Description: Electronic Terminal Disclaimer - Filed** | PTO/SB/25<br>PTO/SB/26<br>U.S. Patent and Trademark Office<br>Department of Commerce |

| | |
|---|---|
| Electronic Petition Request | **TERMINAL DISCLAIMER TO OBVIATE A PROVISIONAL DOUBLE PATENTING REJECTION OVER A PENDING "REFERENCE" APPLICATION**<br>**AND TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT** |
| Application Number | 17719629 |
| Filing Date | 13-Apr-2022 |
| First Named Inventor | Thomas Vilhelmsen |
| Attorney Docket Number | 8481US05 |
| Title of Invention | COMPOSITIONS OF GLP-1 PEPTIDES AND PREPARATION THEREOF |

[redacted]

# Appendix J—503 Prosecution History
March 6, 2025

☒ Filing of terminal disclaimer does not obviate requirement for response under 37 CFR 1.111 to outstanding Office Action

☒ This electronic Terminal Disclaimer is not being used for a Joint Research Agreement.

| Owner | Percent Interest |
|---|---|
| Novo Nordisk A/S | 100 % |

The owner(s) of percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending reference Application Number(s)

17157363 filed on 01/25/2021

17719610 filed on 04/13/2022

as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference application. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the reference application are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term of any patent granted on said reference application, "as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference application," in the event that any such patent granted on the pending reference application: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

[redacted]

# Appendix J—503 Prosecution History

March 6, 2025

The owner(s) with percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of prior patent number(s)

10933120

as the term of said prior patent is presently shortened by any terminal disclaimer. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the prior patent, "as the term of said prior patent is presently shortened by any terminal disclaimer," in the event that said prior patent later:
- expires for failure to pay a maintenance fee;
- is held unenforceable;
- is found invalid by a court of competent jurisdiction;
- is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
- has all claims canceled by a reexamination certificate;
- is reissued; or
- is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

○ Terminal disclaimer fee under 37 CFR 1.20(d) is included with Electronic Terminal Disclaimer request.

◉ I certify, in accordance with 37 CFR 1.4(d)(4), that the terminal disclaimer fee under 37 CFR 1.20(d) required for this terminal disclaimer has already been paid in the above-identified application.

[redacted]

**Appendix J—503 Prosecution History**
March 6, 2025

Doc Code: DISQ.E.FILE
Document Description: Electronic Terminal Disclaimer – Approved

Application No.: 17719629

Filing Date: 13-Apr-2022

Applicant/Patent under Reexamination: Vilhelmsen

Electronic Terminal Disclaimer filed on January 4, 2023

☒ APPROVED

**This patent is subject to a terminal disclaimer**

☐ DISAPPROVED

Approved/Disapproved by: Electronic Terminal Disclaimer automatically approved by EFS-Web

(*Id.* at APOSEM0044680-82).

22. On June 16, 2023, the PTO allowed claims 1-24, 26, and 28-32. The Examiner did not provide any reasons for allowance. (*Id.* at APOSEM0044695-99).

23. On September 19, 2023, the 503 patent issued.