# Exhibit 18

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

1. The earliest application leading to the 923 patent, EP 205, was filed on May 2, 2013. EP 205 included the following claims:

> 1. A GLP-1 peptide for use as an oral pharmaceutical every 2nd day or more often in medical treatment, wherein said peptide has plasma half-life in humans of at least 60 hours.
> 2. A GLP-1 peptidewhich is a low clearance GLP-1 peptide for use as an oral pharmaceutical in medical treatment, wherein dosing regimen is such that the ratio between the plasma half-life in days in humans of said peptide and the dosing interval in days of said peptide is no more than 2:1.

(923 PH at APOSEM0044835).

2. The next application, PCT 974, was filed on May 2, 2014. PCT 974 included the following claims:

> 1. A solid composition comprising a GLP-1 peptide and an enhancer for use as a medicament by oral administration,
> wherein said peptide has plasma half-life in humans of at least 60 hours,
> wherein said composition is administered at least 3 times, and
> wherein a) said composition is administered every second day or more often; or b) said composition is administered such that the ratio between the plasma half-life in days in humans of said peptide and the dosing interval in days of said composition is more than 2:1.
>
> 2. The composition according to any one of the preceding claims, wherein said composition is in the form of a tablet.
>
> 3. The composition according to any one of the preceding claims, wherein said composition is administered at least 5 times, such as at least 7 times or at least 10 times.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

4. The composition according to any one of the preceding claims, wherein said composition is administered twice daily, once daily, or every second day.

5. The composition according to any one of the preceding claims, wherein said enhancer is a salt of *N*-(8-(2-hydroxybenzoyl)amino)caprylic acid, such as SNAC.

6. The composition according to any one of the preceding claims, wherein the amount of SNAC is 100-500 mg SNAC, or wherein the amount of SNAC is 50-90 %(w/w) of said composition.

7. The composition according to any one of the preceding claims, wherein said enhancer is a salt of capric acid, such as sodium caprate.

8. The composition according to any one of the preceding claims, wherein said peptide has plasma half-life in humans of at least 72 hours.

9. The composition according to any one of the preceding claims, wherein said peptide is administered in an amount of 0.01-100 mg, such as 2-60 mg, or such as such as at least 5 mg or at least 10 mg.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

10. The composition according to any one of the preceding embodiments, wherein said composition comprises 1-100 mg GLP-1 peptide and 100-500 mg or 50-90 %(w/w) SNAC.

11. The composition according to any one of the preceding claims, wherein said peptide is semaglutide.

12. The composition according to any one of the preceding embodiments, wherein said composition comprises 1-100 mg semaglutide and 100-500 mg or 50-90 %(w/w) SNAC, or wherein said composition comprises 2-60 mg semaglutide and 200-400 mg SNAC.

13. The composition according to any one of the preceding claims, wherein said composition further comprises one or more pharmaceutically acceptable excipients.

14. The composition according to any one of the preceding claims, wherein said composition is for use in the treatment or prevention of diabetes and/or obesity.

15. A method of oral administration of a solid composition comprising a GLP-1 peptide and an enhancer to a subject in need thereof, wherein said peptide has plasma half-life in humans of at least 60 hours, wherein said composition is administered at least 3 times, and wherein a) said composition is administered every second day or more often; or b) said composition is administered such that the ratio between the plasma half-life in days in humans of said peptide and the dosing interval in days of said composition is more than 2:1.

(683 publication at APOSEM0074118-19).

3. The next application, the 493 application, was filed as a continuation of PCT 974 on October 19, 2015. (493 PH at APOSEM0074125).

4. The 493 application included the following claims after preliminary amendment:

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

1. (Currently Amended) A solid composition comprising a GLP-1 peptide and an enhancer ~~for use as a medicament by oral administration~~,

wherein

a) said peptide has a plasma half-life in humans of at least 60 hours;

b) said composition is administered orally at least 3 times; and

c) said composition is administered such that the ratio between the plasma half-life in days in humans of said peptide and the dosing interval in days of said composition is more than 2:1.

2. (Currently Amended) The composition according to claim 1, wherein said composition is administered every second day or more ~~often~~ frequently.

3. (Currently Amended)The composition according to claim 2, wherein said composition is administered ~~twice daily,~~ once daily~~, or every second day~~.

4. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 1, wherein said composition is in the form of a tablet.

5. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 1, wherein said composition is administered at least 5 times~~, such as at least 7 times or at least 10 times~~.

6. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 1, wherein said enhancer is a salt of *N*-(8-(2-hydroxybenzoyl)amino)caprylic acid, such as SNAC.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

7. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 6, wherein the amount of SNAC is 100-500 mg SNAC~~, or wherein the amount of SNAC is 50-90 %(w/w) of said composition~~.

8. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 1, wherein said enhancer is a salt of capric acid, such as sodium caprate.

9. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 1, wherein said peptide has plasma half-life in humans of at least 72 hours.

10. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 1, wherein said peptide is administered in an amount of 0.01-100 mg~~, such as 2-60 mg, or such as such as at least 5 mg or at least 10 mg~~.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

11. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 7, wherein said composition comprises 1-100 mg GLP-1 peptide ~~and 100-500 mg or 50-90 %(w/w) SNAC~~.

12. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 11, wherein said peptide is semaglutide or $N^{\varepsilon 26}${2-[2-(2-{2-[2-(2-{(S)-4-Carboxy-4-[10-(4-carboxy-phenoxy)decanoylamino]butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy)ethoxy]acetyl}, $N^{\varepsilon 37}$-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}ethoxy)-ethoxy]acetylamino}ethoxy)ethoxy]acetyl}-[Aib$^{8}$,Arg$^{34}$,Lys$^{37}$]GLP-1(7-37)-OH.

13. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 12, wherein said composition comprises ~~1-100 mg semaglutide and 100-500 mg or 50-90 %(w/w) SNAC, or wherein said composition comprises~~ 2-60 mg semaglutide and 200-400 mg SNAC.

14. (Currently Amended) The composition according to ~~any one of the preceding claims~~ claim 1, wherein said composition further comprises one or more pharmaceutically acceptable excipients.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

15. (Cancelled)

16. (New) A method for treating diabetes and/or obesity in a subject in need of such treatment, said method comprising administering to said subject a therapeutically effective amount of a composition according to claim 1.

17. (New) The composition according to claim 6, wherein the amount of SNAC is 50-90 %(w/w) of said composition.

18. (New) The composition according to claim 17, wherein said composition comprises 1-100 mg GLP-1 peptide.

19. (New) The composition according to claim 18, wherein said peptide is semaglutide or $N^{\varepsilon 26}${2-[2-(2-{2-[2-(2-{(S)-4-Carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}ethoxy)-ethoxy]acetylamino}ethoxy)ethoxy]acetyl}, $N^{\varepsilon 37}$-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy)ethoxy]acetyl}-[$Aib^8$,$Arg^{34}$,$Lys^{37}$]GLP-1(7-37)-OH.

20. (New) The composition according to claim 19, wherein said composition comprises 2-60 mg semaglutide.

(*Id.* at APOSEM0074137-39).

5. The last application, the 043 application, was filed as a continuation of the 493 application on July 17, 2017. (923 PH at APOSEM0044733).

6. The 043 application included the following claims:

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

1. A method for treating diabetes and/or obesity in a subject in need of such treatment, said method comprising:
orally administering to said subject a therapeutically effective amount of a solid oral dosage form composition comprising a glucagon-like peptide-1 (GLP-1) peptide and an enhancer,
wherein the GLP-1 peptide has a plasma half-life in humans of at least 60 hours,
wherein the enhancer is a salt of a medium chain fatty acid, and
wherein said composition is administered such that the ratio between the plasma half-life in days in humans of said peptide and the dosing interval in days of said composition is more than 2:1.

2. The method of claim 1, wherein said GLP-1 peptide is an acylated GLP-1 analogue where said analogue has 3 amino acid substitutions or less relative to GLP-1 (7-37).

3. The method of claim 2, wherein said GLP-1 peptide is selected from semaglutide, $N^{\varepsilon 26}${2-[2-(2-{2-[2-(2-{(S)-4-Carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}-ethoxy)ethoxy]acetylamino}ethoxy)ethoxy]acetyl}, or $N^{\varepsilon 37}$-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}ethoxy)ethoxy]acetyl-amino}ethoxy)ethoxy]acetyl}-[$Aib^{8}$,$Arg^{34}$,$Lys^{37}$]GLP-1(7-37)-OH.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

4. The method of claim 3, wherein said enhancer is a salt of *N*-(8-(2-hydroxybenzoyl)amino)caprylic acid.

5. The method of claim 4, wherein said composition is administered every second day or more frequently.

6. The method of claim 5, wherein said composition is administered once daily.

7. The method of claim 4, wherein said composition is in the form of a tablet, capsule, sachet, or granules.

8. The method of claim 7, wherein said composition is in the form of a tablet.

9. The method of claim 4, wherein said GLP-1 peptide is semaglutide.

10. The method of claim 8, wherein the enhancer is sodium N-(8-(2-hydroxybenzoyl)amino)caprylate (SNAC).

11. The method of claim 9, wherein said composition comprises 2-40 mg semaglutide and 200-400 mg SNAC.

12. The method of claim 11, wherein said composition is administered every second day or more frequently.

13. The method of claim 12, wherein said composition is administered once daily.

14. The method of claim 11, wherein said composition is in the form of a tablet, capsule, sachet, or granules.

15. The method of claim 14, wherein said composition is in the form of a tablet.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

(*Id.* at APOSEM0044780-81).

7. On November 2, 2017, the 043 application published as U.S. Patent Publication No. 2017/0312225. (at APOSEM0044837).

8. On August 3, 2018, the PTO issued an Office Action stating:

**Disposition of Claims***
5) ☑ Claim(s) 1-15 is/are pending in the application.
5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 1-15 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement
* If any claims have been determined allowable, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

(*Id.* at APOSEM0045178).

9. Claims 1-10 were rejected under 35 U.S.C. § 112 for failing to comply with the written description requirement. (*Id.* at APOSEM0045179). The Examiner stated:

> Claims 1-10 are rejected under 35 U.S.C. 112(a), as failing to comply with the written description requirement. The claim (s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. Applicant is directed to the Written Description Training Materials, Revision 1, March 25, 2008.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

The claims are drawn to a method of treating diabetes and/or obesity in a subject in need thereof comprising oral administration a therapeutically effective amount of a solid oral dosage form comprising a GLP-1 peptide and an enhancer.

*Vas-Cath Inc. V. Mahurkar*, 19 USPQ2d 1111, states that Applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention. The invention, for purposes of the written description inquiry, is whatever is now claimed (see page 1117). A review of the language of the claim indicates that these claims are drawn to a method utilizing a composition comprising two genera, i.e., "GLP-1 peptide" and "enhancer".

To provide adequate written description and evidence of possession of a claimed genus, the specification must provide sufficient distinguishing characteristics of the genus. The factors to be considered include disclosure of complete or partial structure, physical and/or chemical properties, functional characteristics, structure/function correlation, methods of making the claimed product, or any combination thereof.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

A description of a genus may be achieved by means of a recitation of a representative number of species falling within the scope of the genus or of a recitation of structural features common to the members of the genus, which features constitute a substantial portion of the genus. *Regents of the University of California v. Eli Lilly & Co.*, 119 F3d 1559, 1569, 43 USPQ2d 1398, 1406 (Fed. Cir. 1997). In *Regents of the University of California v. Eli Lilly* (43 USPQ2d 1398-1412), the court held that a generic statement which defines a genus of nucleic acids by only their functional activity does not provide an adequate written description of the genus. The court indicated that, while applicants are not required to disclose every species encompassed by a genus, the description of the genus is achieved by the recitation of a representative number of species falling within the scope of the claimed genus. At section B(1), the court states, "An adequate written description of a DNA ... requires a precise definition, such as by structure, formula, chemical name, or physical properties, not a mere wish or plan for obtaining the claimed chemical invention."

The disclosure (PGPUB 2017/0312225), at paragraphs 0038-0048, provide the following definitions for a "GLP-1 peptide":

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

The terms "GLP-1 peptide" and "active GLP-1 peptide" as used herein mean a peptide which is either human GLP-1 or an analogue or a derivative thereof with GLP-1 activity [paragraph 0038]. The GLP-1 peptides of the invention have GLP-1 activity. This term refers to the ability to bind to the GLP-1 receptor and initiate a signal transduction pathway resulting in insulinotropic action or other physiological effects as is known in the art [paragraph 0040]. The term "GLP-1 analogue" means a modified human GLP-1 wherein one or more amino acid residues of human GLP-1 have been substituted by other amino acid residues and/or wherein one or more amino acid residues have been deleted from human GLP-1 and/or wherein one or more amino acid residues have been added and/or inserted to human GLP-1 [paragraph 0041]. In some embodiments a GLP-1 analogue comprises 10 amino acid modifications (substitutions, deletions, additions (including insertions) and any combination thereof) or less relative to human GLP-1, alternatively 9, 8, 7, 6, 5, 4, 3 or 2 modifications or less, yet alternatively 1 modification relative to human GLP-1. In some embodiments a GLP-1 analogue comprises 5 amino acid modifications (substitutions, deletions, additions (including insertions) and any combination thereof) or less relative to human GLP-1 [paragraph 0043]. Several specific analogues are disclosed in paragraphs 0043-0047. The term "GLP-1 derivative" as used herein means a chemically modified parent GLP-1(7-37) or an analogue thereof, wherein the modification(s) are in the form of attachment of amides, carbohydrates, alkyl groups, acyl groups, esters, PEGylations, combinations thereof, and the like [paragraph 0048]. Paragraphs 0069-0071 disclose several specific GLP-1 derivatives.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

The specification does not describe physical and chemical structure of the claimed GLP-1 peptide that would be correlated with the required biological function, i.e. having a plasma half-life in humans of at least 60 hours.

The disclosure, at paragraphs 0072-0075, provide the following teachings about "enhancer":

The term "enhancer" refers to a compound which increases the bioavailability of the GLP-1 peptide of the composition following oral administration [paragraph 0071]. The enhancer may be a medium chain fatty acid or a salt thereof and has a carbon chain length of from about 4 to about 20 carbon atoms. In some embodiments the enhancer is a salt of capric acid, such as sodium caprate [paragraph 0072]. Several specific enhancers are disclosed in paragraphs 0074 and 0075.

The specification has reduced to practice the following specific tablet compositions:

Compositions comprising SNAC (sodium N-(8-(2-hydroxybenzoyl)amino)caprylate) and

(a) $N^{€26}$-[2-(2-[2-[2-(2-[2-{(S)-4-Carboxy-4-(17-carboxyheptadecanoyl-am-no)butyrylamino]ethoxy}ethoxy)acetylamino]ethoxy]ethoxy)acetyl][Aib8,Arg3- 4]-GLP-1-(7-37) (GLP-1 peptide 1) (Examples 1 and 2)

(b) $N^{€66}$ {2-[2-(2-{2-[2-(2-{(S)-4-Carboxy-4-[10-(4-carboxyphenoxy)-decanoyl-amino]butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy)ethoxy]acety}, $N^{€37}$-{2-[2-(2-{2-[2-(2-{(S)-4-carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}ethoxy)-ethoxy]acetylaminoethoxy}ethoxy]acetyl]-[Aib$^{8}$,Arg$^{34}$,Lys$^{37}$]GLP-1(7-37)-OH (GLP-1 peptide 2) (Example 3)

The specification does not describe physical and chemical structure of the claimed enhancer that would be correlated with the definition of its required biological function, i.e. increasing the bioavailability of the GLP-1 peptide of the composition following oral administration.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

It is noted that there are several species of the claimed genera disclosed. The disclosure of a few species may provide an adequate written description of a genus when the species disclosed is representative of the genus. However, the present claims encompass numerous species that are not further described.

For inventions in an unpredictable art, adequate written description of a genus which embraces widely variant species cannot be achieved by disclosing only one species within the genus. See, e.g., Eli Lilly.

Further, it is not sufficient to define the genus solely by its principal biological property, because an alleged conception having no more specificity than that is simply a wish to know the identity of any material with that biological property. Per the Enzo court's example, (Enzo Biochem, Inc. v. Gen-Probe Inc., 63 USPQ2d 1609 (CA FC 2002) at 1616) of a description of an anti-inflammatory steroid, i.e., a steroid (a generic structural term) couched "in terms of its function of lessening inflammation of tissues"

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> which, the court stated, "fails to distinguish any steroid from others having the same activity or function" and the expression "an antibiotic penicillin" fails to distinguish a particular penicillin molecule from others possessing the same activity and which therefore, fails to satisfy the written description requirement. Similarly, the function of the variant as claimed does not distinguish a particular variant from others having the same activity or function and as such, fails to satisfy the written-description requirement. Applicant has not disclosed any relevant, identifying characteristics, such as structure or other physical and/or chemical properties, sufficient to show possession of the claimed genus. Mere idea or function is insufficient for written description; isolation and characterization at a minimum are required. A description of what a material does, rather than what it is, usually does not suffice. (Eli Lilly, 119 F.3d at 1568, 43 USPQ2d at 1406).
>
> No common structural attributes identify the members of the claimed genera. The general knowledge and level of skill in the art do not supplement the omitted description, because specific, not general guidance is needed. As such, the specification lacks written description for the recited genera and one skilled in the art would not recognize that applicant had possession of the genera of claimed "GLP_1 peptides" and "enhancers" polypeptides for treating diabetes and/or obesity as instantly claimed.

> In the absence of sufficient recitation of distinguishing characteristics, the specification does not provide adequate written description of the claimed genera, which are "GLP-1 peptide" and "enhancer". One of skill in the art would not recognize from the disclosure that the applicant was in possession of the genera. The specification does not clearly allow persons of ordinary skill in the art to recognize that he or she invented what is claimed (see *Vas-Cath* at page 1116).
>
> Applicant is reminded that *Vas-Cath* makes clear that the written description provision of 35 U.S.C. 112 is severable from its enablement provision (see page 1115).

(*Id.* at APOSEM0045179-83).

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

10. Additionally, claims 1-4, 7-11, 14, and 15 were rejected under 35 U.S.C. § 103(a) as obvious over Beglinger 2008 and Nauck 2012. (*Id.* at APOSEM0045185). The Examiner stated:

> Claims 1-4, 7-11, 14, and 15 are rejected under 35 U.S.C. 103(a) as obvious over Beglinger et al. (2010. Am. J. Clin Nutr. 92:810-7) and Nauck et al. (2012. Abstracts of the 48th EASD (European Association for the Study of Diabetes) Annual Meeting of the European Association for the Study of Diabetes. October 1-5, 2012. Berlin, Germany. Diabetologia 2012;55(Suppl.):S7) (cited on IDS of 7/17/17, NPL reference 2).
>
> Beglinger et al. teaches oral administration of GLP-1 (7-36 amide) at a dose of 2.0 and 4.0 mg (abstract). The peptide was mixed with the delivery agent SNAC to transport the peptide across the intestinal epithelium (page 472, 1st column). Tablets comprising SNAC contained 200 mg of SNAC (page 473, 2nd column, Materials); this is the concentration of a GLP-1 and SNAC recited in claim 11. The reference suggests repeating dosing of the tablet comprising GLP-1 in patients with type 2 diabetes and obesity (page 470, 2nd column, 2nd paragraph).
>
> Beglinger et al does not teach a method wherein said GLP-1 peptide is an acylated GLP-1 analogue where said analogue has 3 amino acid substitutions or less relative to GLP-1 (7-37) (Claim 2), wherein said GLP-1 peptide is semaglutide (Claims 2, 3, and 9).

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> Nauck et al. teach randomized trials of semaglutide in the treatment of patients with type 2 diabetes. The drug reduced HbA1c and body weights with minimal side effects. Semaglutide is chemically similar to glucagon-like peptide-1 (GLP-1). The only differences are two amino acid substitutions at positions 8 and 34, where 2-aminoisobutyric acid and arginine are present respectively. In addition, lysine at position 26 is in its derivative form (acylated with stearic diacid).
>
> It would have been *prima facie* obvious to the person of ordinary skill in the art at the time the invention was filed to substitute semaglutide (a GLP-1 analog), as taught by Nauck et al. for GLP-1 utilized in the oral formulation taught by Beglinger et al. The person of ordinary skill in the art would have been motivated to make these modifications and have a reasonable expectation of success because the art recognizes that both GLP-1 and semaglutide are chemically similar compounds to treat Type 2 diabetes; additionally, Beglinger et al. teaches the advantage of oral administration to follow the physiological pathway of release of GLP-1: absorption of the peptide from the small intestine into the splanchnic and portal circulation (page 468, 2nd column, 1st paragraph).

(*Id.* at APOSEM0045185-86).[1]

11. Claims 5, 6, 12 and 13 were further rejected under 35 U.S.C. § 103(a) as obvious over Beglinger 2008 and Nauck 2012 as applied to claims 4 and 11 in view of Fonseca 2012. (*Id.* at APOSEM0045186). The Examiner stated:

[1] The Examiner correctly refers to Beglinger 2008 and addresses the substance of that reference, but incorrectly cites Steinert 2010 ("(2010. Am. J. Clin Nutr. 92:810-7)").

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> Claims 5, 6, 12 and 13 are rejected under 35 U.S.C. 103(a) as obvious over Beglinger et al. (2010) and Nauck et al. (2012) as applied to claims 4 and 11 in view of Fonseca et al. (2012. Diabetes Care. 35:1225-1231).
>
> The teachings of Beglinger et al. and Nauck et al. are set forth in detail above. The references, singularly or in combination, do not teach a method wherein the composition is administered once daily; the references are silent as to therapeutic conditions of administration of the GLP-1 peptide.
>
> Fonseca et al. teach a method of treating diabetes comprising administration of a GLP-1 receptor agonist, lixisenatide (a GLP-1 peptide) (abstract).
>
> It would have been *prima facie* obvious to the person of ordinary skill in the art at the time the invention was filed to administer the composition of semaglutide and SNAC as taught by Beglinger et al. and Nauck et al. and administer the composition daily, as taught by Fonseca for a different, but similar GLP-1 peptide.
>
> Additionally, it is noted that the differences between the claimed method and the prior art method appears to be one of optimization of conditions of administration. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to have optimized the administration conditions of GLP-1 peptide and SNAC to arrive at the administration conditions recited in the claims. See MPEP 2144.05: A. Optimization Within Prior Art Conditions or Through Routine Experimentation

(*Id.*).[2]

12. On December 3, 2018, Novo amended claims 1, 3, 5, 7, 9 and 11, canceled claims 2 and 4, and added new claims 16-25.

[2] Although the Examiner refers to Beglinger 2010, there is no such reference. Here again, the Examiner is referring to Beglinger 2008. *See* Footnote 1.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> Claims 1 through 25 are pending in this application. Of those, claims 1, 3, 5, 7, 9 and 11 are amended, claims 2, 4 are canceled; and claims 16-25 are new. Support for the amended and newly added claims can be found throughout the specification and claims as filed. Accordingly, no new mater is added.

(*Id.* at APOSEM0045213).

13. Following amendment, the then-pending claims read as follows:

> 1. (currently amended) A method for treating diabetes and/or obesity in a subject in need of such treatment, said method comprising:
>
> orally administering to said subject a therapeutically effective amount of a solid oral dosage form composition comprising a glucagon-like peptide-1 (GLP-1) peptide and an enhancer,
>
> wherein:
>
> (a) the GLP-1 peptide is an acylated GLP-1 analogue having 3 amino acid substitutions or less relative to native GLP-1 (7-37) peptide, and has a plasma half-life in humans of at least 60 hours;~~,~~
>
> (b) ~~wherein~~ the enhancer is a salt of ~~a medium chain fatty acid~~ *N*-(8-(2-hydroxybenzoyl)amino)caprylic acid~~,~~; and
>
> ~~wherein~~(c) said composition is administered such that the ratio between the plasma half-life in days in humans of said peptide and the dosing interval in days of said composition is more than 2:1.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

2. (canceled)

3. (currently amended) The method of claim 21, wherein said GLP-1 peptide is selected from the group consisting of N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-Carboxy-4-(17-carboxyheptadecanoylamino)butyryl-amino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1-(7-37) (semaglutide), $N^{\varepsilon 26}${2-[2-(2-{2-[2-(2-{(S)-4-Carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}-ethoxy)ethoxy]acetylamino}ethoxy)ethoxy]acetyl}, or and

$N^{\varepsilon 37}${2-[2-(2-{2-[2-(2-{(S)-4- carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy)ethoxy]acetyl}-[Aib8,Arg34,Lys37]GLP-1(7-37)-OH.

4. ( canceled)

5. (currently amended) The method of claim—43, wherein said composition is administered every second day or more frequently.

6. (original) The method of claim 5, wherein said composition is administered once daily.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

7. (currently amended) The method of claim 43, wherein said composition is in the form of a tablet, capsule, sachet, or granules.

8. (original) The method of claim 7, wherein said composition is in the form of a tablet.

9. (currently amended) The method of claim 43, wherein said GLP-1 peptide is semaglutide.

10. (original) The method of claim 8, wherein the enhancer is sodium N-(8-(2-hydroxybenzoyl)amino)caprylate (SNAC).

11. (currently amended) The method of claim 910, wherein said composition comprises 2-40 mg semaglutide and 200-400 mg SNAC.

12. (original) The method of claim 11, wherein said composition is administered every second day or more frequently.

13. (original) The method of claim 12, wherein said composition is administered once daily.

14. (original) The method of claim 11, wherein said composition is in the form of a tablet, capsule, sachet, or granules.

15. (original) The method of claim 14, wherein said composition is in the form of a tablet.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

16. (new) A method for treating diabetes and/or obesity in a subject in need of such treatment, said method comprising:

orally administering to said subject a therapeutically effective amount of a solid oral dosage form composition comprising a glucagon-like peptide-1 (GLP-1) peptide and an enhancer,

wherein the GLP-1 peptide is:

(a) selected from the group consisting of N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-Carboxy-4-(17-carboxyheptadecanoylamino)butyryl-amino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1-(7-37) (semaglutide) and $N^{\varepsilon 37}${2-[2-(2-{2-[2-(2-{(S)-4- carboxy-4-[10-(4-carboxyphenoxy)decanoylamino]butyrylamino}ethoxy)ethoxy]acetylamino}ethoxy)ethoxy] acetyl}-[$Aib_8$,$Arg_{34}$,$Lys_{37}$]GLP-1(7-37)-OH; and

(b) has a plasma half-life in humans of at least 60 hours;

wherein the enhancer is sodium N-(8-(2-hydroxybenzoyl)amino)caprylate (SNAC); and wherein said composition is administered every second day or more frequently.

17. (new) The method of claim 16, wherein said composition comprises 2-40 mg semaglutide and 200-400 mg SNAC.

18. (new) The method of claim 17, wherein said composition is administered once daily.

19. (new) The method of claim 17, wherein said composition is in the form of a tablet, capsule, sachet, or granules.

20. (new) The method of claim 19, wherein said composition is in the form of a tablet.

21. (new) The method of claim 10, wherein said composition comprises 300 mg of SNAC.

22. (new) The method of claim 17, wherein said composition comprises 300 mg of SNAC.

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> 23. (new) A method for treating diabetes and/or obesity in a subject in need of such treatment, said method comprising:
>
> orally administering to said subject a therapeutically effective amount of a solid oral dosage form composition comprising a glucagon-like peptide-1 (GLP-1) peptide and an enhancer,
>
> wherein:
>
> (a) the GLP-1 peptide is N-epsilon26-[2-(2-{2-[2-(2-{2-[(S)-4-Carboxy-4-(17-carboxyheptadecanoylamino)butyryl-amino]ethoxy}ethoxy)acetylamino]ethoxy}ethoxy)acetyl][Aib8,Arg34]GLP-1-(7-37) (semaglutide) and has a plasma half-life in humans of at least 60 hours;
>
> (b) the enhancer is sodium N-(8-(2-hydroxybenzoyl)amino)caprylate (SNAC); and
>
> (c) the composition is administered once daily.
>
> 24. (new) The method of claim 23, wherein said composition comprises 2-40 mg semaglutide and 200-400 mg SNAC.
>
> 25. (new) The method of claim 24, wherein said composition comprises 300 mg of SNAC.

(*Id.* at APOSEM0045209-12).

14. In response to the written description rejection, Novo stated:

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> The Examiner rejects claims 1-10 under 35 U.S.C. § 112(a), as allegedly failing to comply with the written description requirement. The Examiner alleges that "the specification does not provide adequate written description of the claimed genera, which are 'GLP-1 peptide' and 'enhancer'." (Office Action dated August 3, 2018 at 6.) Applicants respectfully traverse.
>
> Amended claim 1 and claims dependent therefrom, newly added claims 16, 24 and claims dependent therefrom recite *inter alia*, an acylated GLP-1 analogue having at least 3 amino acid substitutions relative to the native GLP-1 peptide and a salt of *N*-(8-(2-hydroxybenzoyl)amino)caprylic acid as the enhancer. Newly added independent claims 16 and 23 recite specific GLP-1 analogues and sodium N-(8-(2-hydroxybenzoyl)amino)caprylate (SNAC) as the enhancer. Support for the amended and newly added claims can be found throughout the specification as filed, including in Examples 1, 2, and 3 and Tables 1, 2 and 3. Accordingly, Applicants respectfully request that this rejection be withdrawn.

(*Id.* at APOSEM0045213).

15. Novo also attempted to distinguish Beglinger 2008 and Nauck 2012, including as follows:

> The Examiner rejects claims 1-4, 7-11, 14 and 15 under 35 U.S.C. § 103(a) as allegedly obvious over Beglinger *et al.* (2010. Am. J. Clin Nutr. 92:810-7; previously cited) and Nauck *et al.* (2012. Abstracts of the 48th EASD (European Association for the Study of Diabetes) Annual

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

Meeting of the European Association for the Study of Diabetes. October 1-5, 2012. Berlin, Germany Diabetologia 2012;55(Suppl.):S7); previously cited). Applicants respectfully traverse.

Claim 1 as amended recites the features of now canceled claim 2. The Examiner concedes on the record that the primary reference "Beglinger *et al.* does not teach a method wherein said GLP-1 peptide is an acylated analogue where said analogue has 3 amino acid substitutions or less relative to GLP-1 (7-37)". (Office Action dated August 3, 2018 at 8.) Newly added claims 16 and 23 recite the features of dependent claim 3 which the Examiner also conceded on the record are not taught by Beglinger *et al.* (*See id.*) However, the Examiner relies on Nauck *et al.* to remedy the deficiencies of Beglinger *et al.* Specifically, the Examiner alleges that "Nauck *et al.* teach randomized trials of semaglutide in the treatment of patients with type 2 diabetes." (*Id.*) The Examiner then concludes that it would have been "prima facie obvious to the person of ordinary skill in the art at the time the invention was filed to substitute semaglutide (a GLP-1 analog), as taught by Nauck *et al.* for GLP-1 utilized in the oral formulation taught by Beglinger *et al.*" with reasonable expectation of success. (*Id.*) Applicants disagree.

The claims in the present application recite a method of treating diabetes and/or obesity in a subject in need thereof by orally administering a solid oral dosage form of a composition comprising an acylated GLP-1 analog and an enhancer (e.g., SNAC), wherein the GLP-1 analogue has a plasma half-life in humans of at least 60 hours, and wherein the composition is administered such that the ratio between the plasma half-life in days in humans of said peptide and the dosing interval in days of said composition is more than 2:1 (claim 1), administered every second day or more frequently (claim 16) and administered once daily (claim 24). The inventors have discovered that the variability in plasma concentration of the recited composition is surprisingly lower when dosing the composition accordingly to the claimed methods. (See Specification as filed at 3, ll.1-22, Examples 1-3, Tables 1-3.) This is contrary to a person skilled in the art (PHOSITA) would expect based on the features of the GLP-1 analogue of the composition recited in the claims, which has a plasma half-life in humans of at least 60 hours. Specifically: "GLP-1 peptides with plasma half-life in humans of at least 60 hours would have been expected to be . . . included in an oral dosing regimen with a low frequency of administration, e.g. once weekly" (*id.* at 2, ll.20-23.), rather than

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> more frequent administration according to the recited methods. This, the art of record does not teach or suggest.
>
> In contrast, Beglinger *et al.* is limited to "native peptides, the short half-life of which was a major hurdle" (page 816, col.2 para.2.) To the extent Beglinger *et al.* mentions GLP-1 analogs, they are in a context of subcutaneous injections (see page 816, col. 1 para. 3). Nowhere does Beglinger *et al.* teach or suggest use of GLP-1 analogs administered orally in a method of treating diabetes and/or obesity either alone or in combination with an enhancer (e.g., SNAC), according to the recited dosing regimens.
>
> Contrary to Examiner's allegations, Nauck *et al.* does not remedy the deficiencies of Beglinger *et al.* because Nauck *et al.* describes a GLP-1 analogue administered subcutaneously (". . . received sc injection of one of five semaglutide doses" Abstract, Materials & Methods Section). There is nothing in these references to suggest to PHOSITA that a GLP-1 analog having a plasma half-life in humans of at least 60 hours can be combined with an enhancer in a method of treating diabetes and/or obesity by orally administering a solid oral dosage form of a composition according to the recited methods. Applicants submit that Begligner *et al.* in view of Nauck *et al.* do no teach all of the limitation of claims 1, 16, 23 and claims dependent therefrom. Therefore, Applicants respectfully request withdrawal of this rejection.

(*Id.* at APOSEM0045213-15).[3]

16. Novo further attempted to distinguish Beglinger 2008 in view of Nauck 2012 and Fonseca 2012, including as follows:

[3] Despite the Examiner clearly referring to Beglinger 2008 in the August 3, 2018 rejection, Novo responded to that rejection by distinguishing Steinert 2010, and referring to Steinert 2010 as "Beglinger *et al.*"

[redacted]



> The Examiner also rejects claims 5, 6, 12 and 13 under 35 U.S.C. § 103(a) as allegedly obvious over Beglinger *et al.* (2010. Am. J. Clin Nutr. 92:810-7; previously cited) and Nauck *et al.* (2012. Abstracts of the 48th EASD (European Association for the Study of Diabetes) Annual Meeting of the European Association for the Study of Diabetes. October 1-5, 2012. Berlin, Germany Diabetologia 2012;55(Suppl.):S7); previously cited); as applied to claim 4 and 11 in view of Fonseca *et al.* (2012. Diabetes Care. 35:1225-1231; previously cited). Applicants respectfully traverse.
>
> As discussed above, Beglinger *et al.* and Nauck *et al.* do not teach or suggest all of the limitations of amended claims 1, newly added claims 16, 23 and claims dependent therefrom. Fonseca *et al.* does not remedy the deficiencies of Beglinger *et al.* and Nauck *et al.* Because claims 5, 6, 12 and 13 ultimately depend from amended claim 1, these claims are also not rendered obvious by the cited references. Accordingly, Applicants respectfully request withdrawal of this rejection.

(*Id.* at APOSEM0045215-16).

17. On March 13, 2019, the Examiner allowed then-pending claims 1, 3 and 5-25. (*Id.* at APOSEM0045218; *id.* at APOSEM0045222). The Examiner stated:

[redacted]

**Appendix K—923 Prosecution History**
March 6, 2025

> Claims 2 and 4 have been canceled. All rejections of the claims are therefore moot.
>
> Applicants' amendment to the claims have overcome the following rejections of record:
>
> The rejection of Claims 1, 3, and 5-10 under 35 U.S.C. 112(a), as failing to comply with the written description requirement.
>
> The rejection of Claims 1, 3, 7-11, 14, and 15 under 35 U.S.C. 103(a) as obvious over Beglinger et al. (2010) and Nauck et al. (2012).
>
> The rejection of Claims 5, 6, 12 and 13 under 35 U.S.C. 103(a) as obvious over Beglinger et al. (2010) and Nauck et al. (2012) as applied to claims 4 and 11 in view of Fonseca et al. (2012).

(*Id.* at APOSEM0045223).[4]

18. On May 7, 2019, the 923 patent issued. (*Id.* at APOSEM0045236).

***

[4] Although the Examiner refers to Beglinger 2010, there is no such reference. Here again, the Examiner is referring to Beglinger 2008. *See* Footnote 1.